

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHRISTIAN LEFER and ALLISON LEFER, | CV 13–06–BLG–DWM |
| Plaintiffs, | |
| vs. | ORDER |
| JAMES W. "JIM" MURRY, COMMISSIONER OF POLITICAL PRACTICES, STATE OF MONTANA, and STATE OF MONTANA, | |
| Defendants. | |

## I.   Background

On March 17, 2011 the Office of the Montana Commissioner of Political

Practices[1] received three boxes from two individuals in Colorado.  Officials in the

Commissioner's office examined the contents of the boxes.  They determined that

the boxes held thousands of pages of documents (the Colorado Documents),

---

[1] Five individuals have served as Commissioner of Political Practices at times relevant to this matter.  Dennis Unsworth served as Commissioner from September 6, 2006 until December 31, 2010.  Jennifer Hensley served as Commissioner from January 3, 2011 until May 19, 2011. David Gallik served as Commissioner from May 23, 2011 until January 18, 2012.  James W. "Jim" Murry served as Commissioner from February 7, 2012 until April 24, 2013.  Jonathan Motl is the current Commissioner of Political Practices; his term began June 10, 2013.

including campaign materials for various candidates for state and local elective office in Montana and Colorado and materials related to political organizations like Western Tradition Partnership.  The Colorado Documents did not belong to any single person or organization.  Officials in the Commissioner's office believed, however, that the documents were evidence of violations of both federal and state laws governing elections and campaign finance.  The Commissioner's office retained the Colorado Documents as public records, in accordance with state law.  *See* Mont. Code Ann. §§ 13-37-118; 13-37-119(1) (2013).[2]

Earlier, in 2010, the Commissioner adjudicated a complaint filed against Western Tradition Partnership.  The Commissioner found Western Tradition Partnership's campaign activities in Montana in 2008 violated Montana campaign finance and disclosure laws.  When the Colorado Documents were in the Commissioner's possession, Western Tradition Partnership was involved in litigation challenging the disclosure laws.  *See W. Tradition Partn. v. Atty. Gen.*, 271 P.3d 1 (Mont. 2011).  The Montana Supreme Court's decision, upholding Montana laws related to corporate expenditures on elections, was appealed to the United States Supreme Court and reversed.  *See Am. Tradition Partn. v. Bullock*,

---

[2] All subsequent citations to the Montana Code Annotated refer to the 2013 edition.

___ U.S. ___, 132 S. Ct. 2490 (2012).

Leading up to and in the wake of the United States Supreme Court's decision, national media focused on Montana's system of campaign finance regulation. *See, e.g., Montana and the Supreme Court*, N.Y. Times A24 (Feb. 14, 2012); Jess Bravin, *Court Blocks Montana Campaign-Finance Ruling*, Wall Street Journal (Feb. 18, 2012); *Montana Defies Supreme Court's Citizens United Case*, National Public Radio Morning Edition (Feb. 27, 2012); Robert Barnes & Dan Eggen, *Justices Reject State Law, Uphold Citizens United Ruling*, Wash. Post A7 (June 26, 2012). Officials in the Commissioner's office were contacted by journalists seeking to review public records and documents. In April and July of 2012, affiliates of the PBS program Frontline visited the Commissioner's office to review public files related to organizations like Western Tradition Partnership. The documents the PBS producers inspected included the Colorado Documents. Based in part on their review of public documents in the Commissioner's possession, a documentary entitled "Big Sky, Big Money" aired on PBS Frontline on October 30, 2012. On October 29, 2012, in anticipation of its release, the Frontline producers published related articles online.

The Commissioner's office received several communications related to the Colorado Documents in the days that followed. An organization called Montana

Right to Work claimed ownership of the documents, as did one of the Plaintiffs in this action, Christian LeFer.  October 29, 2012, the day the articles were published online, counsel for the LeFers emailed the Commissioner demanding the Colorado Documents be handed over.  After receiving competing claims of ownership, on November 1, 2012, the Commissioner ceased offering public access to the Colorado Documents until the ownership dispute was resolved in court.  The Colorado Documents were deposited in a secure location off the premises of the Commissioner's office.  Another organization, American Tradition Partnership,[3] asserted a claim of ownership of financial and bank records in the Colorado Documents in a December 20, 2012 posting on the organization's website.

In response to a federal grand jury subpoena in December 2012, the Commissioner's office delivered all of the Colorado Documents, as well as files related to complaints against American Tradition Partnership and Western Tradition Partnership, to a grand jury sitting in this district.  Grand jury proceedings are secret, Fed. R. Crim. P. 6(e)(2), and records and subpoenas in connection with their activities are sealed, Fed. R. Crim. P. 6(e)(6).  The nature of the proceedings is not publicly known at this time.  The Colorado Documents

---

[3] American Tradition Partnership was formerly known as Western Tradition Partnership. They are the same organization. *See* Compl., at ¶ 1, *Am. Tradition Partn. v. Murry, et al.*, No. CV–12–78–BU–DLC (D. Mont. Nov. 5, 2012).

-4-

remain in the possession of the grand jury to this day.

The Colorado Documents are not available for review to test the LeFers' claims of ownership or the claims of ownership asserted by nonparties. The State has produced seven pages of the Colorado Documents in briefing their Motion for Summary Judgment, all of which were obtained in connection with two other federal lawsuits. These seven pages are the only pages the State has; they do not establish the owner or owners of the thousands of pages of documents in the boxes delivered to the Commissioner.

## II.   Procedural History

### A.   Montana First Judicial District Court

Three days after asserting ownership of the Colorado Documents and demanding they be handed over, and without having inspected the documents or even knowing what was contained in them or who owned them, the LeFers filed suit in Montana District Court in Lewis and Clark County. *See LeFer v. Murry*, Cause No. CDV-2012-946 (Mont. First Jud. Dist. Nov. 1, 2012). The LeFers voluntarily dismissed that action on December 11, 2012. The LeFers' Complaint before the Montana First Judicial District Court asserted claims to ownership of the Colorado Documents against Commissioner Murry in his individual and official capacities now at issue in this litigation. The State was not named as a

-5-

defendant in the First Judicial District Court case.

### B.    Montana Sixth Judicial District Court

Shortly before abandoning their Lewis and Clark County action, where they made the same or similar ownership claims of the Colorado Documents, the LeFers re-filed their case in Park County. *See LeFer v. Murry*, Cause No. DV-2012-205 (Mont. Sixth Jud. Dist. Nov. 26, 2012). This suit originally named only Commissioner Murry in his official and individual capacities. It did not name the State as a defendant.

The second lawsuit does little to disguise the LeFers' purpose for pursuing this action. Instead of "a short and plain statement of the claim showing that the pleader is entitled to relief," Mont. R. Civ. P. 8(a)(1), the LeFers' Complaint presents fanciful screed replete with distorted accusations implying and attributing bias and nefarious motive on the part of the Commissioner. For example, the Complaint accuses the Commissioner of granting access to the Colorado Documents for improper political purposes and labels the Commissioner "a liberal Democrat political patronage appointee." (Doc. 5 at ¶¶ 8-9.) This politicized rhetoric has no place in proper pleading and appears to serve but one purpose: it grabbed headlines.

After filing the Complaint, the LeFers sought and obtained a Protective

Order from the state court.  The Protective Order ultimately confirmed the

Commissioner's commitment to disallow public access to the documents while

ownership was disputed.

Plaintiffs sought an *ex parte* Order directing the Commissioner to deposit

the Colorado Documents with the state district court.  The state court granted that

order December 17, 2012.  Before he could question the propriety of complying

with the Order, on December 19, 2012, the Commissioner and his staff were

served with a grand jury subpoena.  The Commissioner complied with the federal

grand jury subpoena, and then notified the state court of his inability to comply

with the questionable Order of Deposit.

The LeFers' *ex parte* application to the state district court for an Order of

Deposit was incomplete, rested on an unreasonable interpretation of legal

authority, and presented misrepresentations of fact to the state judge.  In seeking

the *ex parte* Order of Deposit, the LeFers told the judge that they had provided

notice of their application to the Commissioner.  But the notice the LeFers

provided to the Commissioner failed to provide the date and time at which the

LeFers were going to make the application.  The LeFers' request for the *ex parte*

Order relied on Montana Rule of Civil Procedure 67.  Their representations

regarding the scope and application of that rule tried to fit a square peg in a round

-7-

hole, attempting to compel an opposing party to deposit property based on a rule

that simply allows a party to deposit property.[4] More troubling still, the LeFers

misrepresented facts surrounding this case in seeking the Order of Deposit. The

LeFers told the state judge that "Defendant Murry gave the national news media

access to the Colorado Documents in late October, 2012, in an apparent effort to

embarrass certain candidates on the eve of the 2012 election." (Doc. 4 at 68.) In

fact, the LeFers made no reasonable inquiry into the truth of this allegation. They

guessed, and represented this guess as fact to the state judge. It is now undisputed

that the Commissioner last provided public access to the documents in July of

2012. And, its factual inaccuracy aside, the claim that the Commissioner provided

public access to the documents for an improper political purpose echoes the

implications of bias and nefarious motive present in the original Complaint. The

pleadings evidence the Plaintiffs' belief that the end justifies the means, a

principle that has no safe harbor in the rule of law.

The LeFers filed their First Amended Complaint on December 24, 2012,

attempting to add the State of Montana as a Defendant to the case. Remarkably,

two different versions of this pleading were circulated. One, filed with the state

---

[4] An Order of this Court (Doc. 21) later vacated the state district court's Order of Deposit as improvidently granted.

-8-

district court, named the State of Montana as a defendant and made claims for relief against the state. A different version, apparently an earlier draft of the document filed in the state district court, was served on Commissioner Murry. Thus, the state judge and the Defendants were not privy to identical pleadings. These complaints had substantial differences which were not cured until after the case was removed to federal court.

In January 2013, after obtaining an Order of Deposit from the Sixth Judicial District Court on the questionable pretenses stated above, and after the Commissioner indicated his inability to comply with the Order, the LeFers served the Commissioner with a Motion seeking to hold the Commissioner in contempt. This Motion was never filed with the state district court or with this Court after the action was removed. It served as political theater rather than legitimate legal practice.

## C.    United States District Court

Commissioner Murry removed the Park County case to this Court on January 17, 2013. The case was removed from the Montana Sixth Judicial District Court in Park County to the Billings Division, pursuant to Local Rule 1.2(c). Orders and other proceedings before the state district court remained in effect pursuant to 28 U.S.C. § 1450.

-9-

Commissioner Murry moved to vacate the state district court's Order of Deposit. The Commissioner's Motion was granted on March 8th because the justifications for ordering deposit of the Colorado Documents stood "inapposite to the plain language of both" Mont. R. Civ. P. 67 and Fed. R. Civ. P. 67. (Doc. 21 at 2-3.)

The LeFers then moved to remand the case back to the state district court on the grounds that the State failed to join in Commissioner Murry's notice of removal. The LeFers' Motion was denied on the grounds that removal was proper as a matter of law and the Motion to Remand was not timely.

An Initial Pretrial Conference was held on March 29th where the parties agreed to a limited series of stipulations of fact. After a lengthy discussion regarding the facts of the case and the confusion surrounding the two versions of the First Amended Complaint then circulating, the parties were ordered to proceed based on the version of the document Plaintiffs actually filed with the state district court.

On April 12th the LeFers filed the now-operative Second Amended Complaint, making claims against Commissioner Murry in his individual and official capacities and against the State of Montana. Their Second Amended Complaint differs from the First Amended Complaint in that it does not include

-10-

unripe tort claims originally pled against the State.  Plaintiffs now allege

Commissioner Murry and the State or its agents acted in concert to cause them

harm.  The Second Amended Complaint recites four separate counts against the

Defendants.  Count I is pled against the Commissioner and the State and seeks

declaratory judgment that the Colorado Documents and all copies or reproductions

must be given to Plaintiffs, along with an award of attorney fees and expenses.

Count II is pled against the Commissioner and the State and seeks recovery of the

Colorado Documents as personal property of the LeFers.  Count III is pled against

Commissioner Murry and alleges claims arising under the United States

Constitution under 42 U.S.C. § 1983.  Count IV is pled against Commissioner

Murry and the State and alleges claims arising under the Montana Constitution.

As Count III of the Second Amended Complaint relates a claim under 42

U.S.C. § 1983, a federal question is before the Court and jurisdiction is proper

under 28 U.S.C. § 1331.

Defendants filed Motions for Summary Judgment on May 1st of this year.

(Docs. 38 and 43.)  Plaintiffs shortly thereafter filed Motions for Voluntary

Dismissal. (Docs. 49 and 51.)  The LeFers responded to the State of Montana's

Motion for Summary Judgment but chose to leave the Commissioner's Motion for

Summary Judgment unanswered.  On June 27th, the Court heard argument on the

pending motions at the James F. Battin Federal Courthouse in Billings. This order
resolves the issues raised for the reasons set forth below.

## III.   Discussion

### A.   Claims against Commissioner Murry

The Second Amended Complaint asks for a declaratory judgment, for
recovery of personal property, and makes federal and state constitutional claims
against Commissioner Murry. Murry moved for summary judgment and Plaintiffs'
retort was to move for voluntary dismissal on each of these claims. The LeFers
may not dismiss their case simply on notice. Commissioner Murry served his
Motion for Summary Judgment before the LeFers' motion to voluntarily dismiss
and Commissioner Murry has not consented to a stipulation of dismissal. *See* Fed.
R. Civ. P. 41(a)(1)(A). Given the procedural morass caused by the LeFers'
posturing, if they were free to dismiss this action on notice alone, the dismissal
would operate as an adjudication on the merits of their Second Amended
Complaint, because the LeFers previously dismissed a state court action based on
the same claims. *See* Fed. R. Civ. P. 41(a)(1)(B). The presumption of dismissal
with prejudice on a notice of dismissal does not apply to a motion seeking
voluntary dismissal by court order. *Com. Space Mgt. Co., Inc. v. Boeing Co., Inc.*,
193 F.3d 1074, 1078 (9th Cir. 1999); *compare* Fed. R. Civ. P. 41(a)(1)(B) *with*

-12-

Fed. R. Civ. P. 41(a)(2). But, Rule 41(a)(2) prevents abusive litigation tactics by a plaintiff and the attendant legal prejudice to a defendant. "A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) *unless* a defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 976 (9th Cir. 2001) (footnote and citations omitted) (emphasis added). A motion to dismiss under Rule 41(a)(2) is committed to the sound discretion of the Court. *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980).

In this case the Commissioner of Political Practices would suffer plain legal prejudice if the LeFers are allowed to voluntarily dismiss their case. The Commissioner argues that the Plaintiffs want dismissal because they realize they have no defense to the Commissioner's Motion for Summary Judgment but want to keep the courthouse door open so they can file a new complaint against a different commissioner. Because the LeFers have already filed and dismissed one action making the same claims, the argument may be prescient.

The LeFers' Motion to Dismiss this action without prejudice seeks the Court's blessing on their filing yet another action in yet another court based on the same claims. The general rule that dismissal should be granted on the Plaintiff's request does not apply here because of the prejudice and legal harm to

-13-

Commissioner Murry and the State of Montana.  While the LeFers have moved to dismiss their claims against both Defendants, they have made it clear they are contemplating reasserting these and related claims in state court.  Considered in conjunction with the Plaintiffs' past filings, prejudice and legal harm to the Defendants is clear.  When a plaintiff seeks to avoid an adverse decision on a motion for summary judgment, dismissal is inappropriate. *Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299 Fed. Appx. 664, 666 (9th Cir. 2008) (citing *Terrovona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1998) ("A district court may consider whether the plaintiff is requesting a voluntary dismissal only to avoid a near certain adverse ruling.").  Commissioner Murry has expended significant effort and cost in defending against these suits.  His Motion for Summary Judgment was filed in accordance with the procedure and schedule set forth in the Rule 16 scheduling conference for resolving this matter.   Groundhog Day litigation, repeating the same case over and over again, amounts to little more than harassment.  Any path but deciding the Commissioner's Motion for Summary Judgment would work a hardship on Defendants, by allowing the LeFers to use procedural tools to avoid summary adjudication of each of their claims against the Commissioner on the merits but allowing them a free pass to start over in a different forum.  There was a time for LeFers to abandon the ship of litigation.

-14-

They did not timely use the Rule 41(a)(1)(B) lifeboat, so now their case sinks and they, like captains, sink with it.  LeFers' Motion to Dismiss is denied.

Pursuant to Order of the Court (Doc. 31), Commissioner Murry filed his Motion for Summary Judgment and other required documentation on May 1st. The deadline for the LeFers to respond was May 22, 2013.  The LeFers did not respond to Commissioner Murry's Motion.  Even so, a motion for summary judgment cannot be granted solely based on the opposing party's waiver or violation of a local rule.  *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995).  A district court must exercise discretion when entering judgment pursuant to Rule 56.  *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The LeFers' procedural default aside, Commissioner Murry's Motion is well-taken.

Summary judgment is appropriate if the moving party shows there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In *In re Oracle Corp. Securities Litigation*, the Ninth Circuit comprehensively discussed the summary judgment standard:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's

> case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.  In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d 376, 387 (9th Cir. 2010).  There are no material questions of fact in dispute and the Commissioner is entitled to judgment as a matter of law.

### 1.    Count I against Commissioner Murry

At the time the Colorado Documents were in the possession of the Montana Commissioner of Political Practices, they were public documents.  That means members of the public and members of the press were entitled to inspect and copy them.  The LeFers' claim for declaratory relief pled in Count I against Commissioner Murry in his official capacity is without merit.  When the Commissioner received the Colorado Documents, notably it was not Commissioner Murry, he was required to accept and file them by Montana law.  Mont. Code Ann. § 13-37-118 ("The commissioner shall accept and file information voluntarily supplied that exceeds the requirements of chapter 35 of

this title or this chapter.")  Once in the Commissioner's possession, the Colorado

Documents became public records.   Mont. Code Ann. § 13-37-119(1) ("The

commissioner shall make statements and other information filed with the

commissioner's office available for public inspection and copying . . . .").

Beyond the Commissioner's enabling legislation, the Montana

Constitution's robust protection for the public's right to know compels the

conclusion that the Colorado Documents are public records.  "No person shall be

deprived of the right to examine documents or to observe the deliberations of all

public bodies or agencies of state government and its subdivisions, except in cases

in which the demand of individual privacy clearly exceeds the merits of public

disclosure."  Mont. Const. art. II, § 9.  This constitutional provision requires

entities like the Commissioner of Political Practices to make records available for

public inspection.  *See Great Falls Tribune v. Mont. PSC*, 82 P.3d 876, 886 (Mont.

2003) (holding that Article II, § 9 of the Montana Constitution imposes an

affirmative duty on government officials to make records available to public

scrutiny).  Transparency is a constitutional requirement because it is crucial to an

informed electorate.

When a document is public under Montana law, whether it is subject to

release "requires another analytical step—a balancing test based on the facts of the

-17-

case to determine whether the public's right to know is greater than the

individual's right to privacy." *Billings Gazette v. City of Billings*, 267 P.3d 11, 16

(Mont. 2011). In balancing the public's right to know with an individual privacy

interest, a two prong test applies: considering (1) whether the individual has a

subjective or actual expectation of privacy and (2) whether society is willing to

recognize that expectation as reasonable. *Id.* at 14.

It is not possible to apply this test here. There are no facts in the record that

would permit the LeFers to claim an individual privacy interest, based on an actual

expectation of privacy, as to the Colorado documents. A subjective or actual

expectation of privacy in the documents would require the LeFers to know the

actual contents of the boxes shipped to the Commissioner. The LeFers did not ask

to see the documents. The LeFers did not claim an ownership or privacy interest

in the Colorado Documents until October 29, 2012, months after the documents

had been viewed by the Frontline producers and after reports about them were

published. The LeFers' insistence that the Colorado Documents are private

property holds no water.

The Colorado Documents are public records. They were voluntarily

provided to the Commissioner's office and filed on the record, in accordance with

Montana law. The Commissioner and his staff made the records, including the

Colorado Documents, available for public inspection and copying, as required by Montana law. Commissioner Murry is entitled to summary judgment as to Count I, which seeks a declaratory judgment as to the status of the documents. The conclusion that Commissioner Murry complied with state law also forms the basis for finding he is entitled to summary judgment as to other claims as discussed below.

### 2. Count II against Commissioner Murry

Count II of the LeFers' Second Amended Complaint seeks "a judgment for possession of the Colorado Documents" and any copies thereof retained by Commissioner Murry. Since there is no legal basis on which to order the return of the Colorado Documents to the LeFers, Commissioner Murry is entitled to summary judgment as to Count II.

The LeFers cannot meet the legal elements required for court-ordered return of the Colorado Documents. In Montana the common law remedy of replevin has been superceded by a statutory action for the claim and delivery of personal property. *Heiser v. Severy*, 158 P.2d 501, 505 (Mont. 1945). The claimant in an action for claim and delivery of personal property must prove the property is wrongfully detained by the defendant. *See* Mont. Code Ann. § 27-17-201(2); *1st Bank v. Winderl*, 60 P.3d 998, 1001 (Mont. 2002).

The Commissioner did not wrongfully detain the Colorado Documents.

Commissioner Murry properly held and processed the Colorado Documents from

the time when they were delivered to his predecessors until they were subpoenaed

by a federal grand jury.  When the Commissioner's office received the Colorado

Documents, it was required to accept and file them pursuant to Montana law.

Mont. Code Ann. § 13-37-118.  Once received, the Commissioner was required to

retain the documents for a statutorily-prescribed period of ten years.  *See* Mont.

Code Ann. § 13-37-119(2).  One further and obvious problem for the LeFers is

that a public official cannot be sued under the Montana claim and delivery statute

for performing a public duty.  *Harri v. Isaac*, 107 P.2d 137, 140 (Mont. 1940).

Because the documents were properly and legally retained by the

Commissioner, and turned over to the federal government pursuant to grand jury

subpoena, the LeFers cannot meet the statutory requirement that the person

claiming ownership in an action for the claim and delivery of personal property

show the documents were wrongfully detained.  The LeFers cannot, as a matter of

law, establish that the Commissioner was wrongfully in possession of the

Colorado Documents at any time.

### 3.    Count III against Commissioner Murry

Count III of the LeFers Second Amended Complaint makes claims against

Commissioner Murry arising under the United States Constitution.  The LeFers insist Commissioner Murry deprived them of their constitutional right to privacy and their rights to freedom of speech, assembly, and association in violation of 42 U.S.C. § 1983.  For these claims the LeFers want judgment against Commissioner Murry in his individual capacity.

The LeFers' § 1983 claims against Commissioner Murry were sunk from the beginning because he is entitled to absolute immunity from suit in his individual capacity for his acts as the Commissioner of Political Practices.  State executive officials like the Commissioner are immune from § 1983 suits if they perform functions analogous to those of a judge.  *Buckwalter v. Nev. Bd. of Med. Examrs.*, 678 F.3d 737, 740 (9th Cir. 2012).  "[T]he nature of the function performed, not the identity of the actor who performed it" controls whether an official's acts are cloaked in immunity.  *Forrester v. White*, 484 U.S. 219, 229 (1988).  Six nonexclusive factors guide a court in determining whether a state officer's function is analogous to a judge's:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz v. Economou*, 438

U.S. 478, 512 (1978)).  If, after applying the *Butz* factors, the Court concludes a

state official was functioning in a quasi-judicial capacity when the acts giving rise

to the § 1983 suit took place, the official is absolutely immune from suit.  *Id.*

 The applicability of five of the *Butz* factors to the Commissioner's

investigative functions which give rise to the LeFers' § 1983 claim can be inferred

from the office's enabling statutes.  The need to ensure the office carries out its

duties without threat of harassment or intimidation by any person or political

ideology is furthered by provisions of Montana law governing appointment and

removal of the Commissioner, *see* Mont. Code Ann. §§ 13-37-102, 13-37-103, and

the statutory description of the Commissioner's duties, *see id.* § 13-37-111; *see*

*also Doty v. Mont. Commr. of Pol. Pracs.*, 173 P.3d 700, 703 (Mont. 2007).

Montana legislators created an independent administrative agent charged with

evenhanded enforcement of election law.  Coupled with the provision barring the

Commissioner from undertaking political activities, *see* Mont. Code Ann. § 13-37-

108, these statutes also lead to the inference that the Commissioner must be

insulated from political influence.  The state law's provision for judicial review of

the Commissioner's decisions, *see* Mont. Code Ann. § 13-37-122, and the rules

which govern the Commissioner's investigative functions, *see* Admin. R. Mont.

44.10.307, demonstrate the presence of safeguards that reduce the need for private

damages actions as a means of controlling unconstitutional conduct and provide

for the correction of errors in judgment on appeal to the state court system.  While

there is no provision for an adversarial process in the Commissioner's

investigative work, the public nature of the Commissioner's findings following an

investigation, *see* Admin. R. Mont. 44.10.307(4), and the precedential nature of

other pronouncements made by the Commissioner, *see* Admin. R. Mont.

44.10.201(e), show the importance of precedent in the Commissioner's work.

Viewing the six *Butz* factors in their totality compels finding that the

Commissioner's activities in the § 1983 claims alleged in Count III of the LeFers'

Second Amended Complaint are functionally comparable to the functions of a

judicial official.  The acts surrounding the Commissioner's adjudication of

complaints are quasi-judicial and entitle him to absolute immunity from suit under

42 U.S.C. § 1983.  His adherence to the public records requirement specifically set

forth at Montana Code Annotated § 13-37-119(1) and supported by Article II, § 9

of the Montana Constitution is not an act for which the LeFers may seek civil

damages.

### 4.    Count IV against Commissioner Murry

Count IV of the Second Amended Complaint alleges claims against the

Commissioner arising under the Montana Constitution, maintaining there were violations of the LeFers' rights to due process, freedom of speech, freedom of assembly, and privacy. Commissioner Murry claims statutory immunity for his actions by virtue of Montana Code Annotated § 2-9-103. The LeFers do not take issue with that claim, even if Murry's actions unconstitutionally infringed on their rights, so the Commissioner is entitled to statutory immunity because he acted in good faith, without malice or corruption.

The Commissioner's Motion for Summary Judgment is well-taken as to Count IV. Montana law provides immunity from civil suit for deprivation of rights under the Montana Constitution for officers of governmental agencies who act in good faith, without malice or corruption, and under the authority of law. Mont. Code Ann. § 2-9-103. There is no proof in the record to give rise to a question about the Commissioner's immunity. Nothing in the record shows he did not act in good faith or that he acted with malice or corruption. He and his office followed the law in good faith and without corruption or malice when they retained and subsequently made the Colorado Documents available to the public and the press. *See* Mont. Const. art. II, § 9; *see also* Mont. Code Ann. §§ 13-37-117; 13-37-119. Summary judgment is granted on claims asserted against the Commissioner in Count IV of the Second Amended Complaint because even if the

LeFers were to successfully challenge the statutory authority on which Commissioner Murry and his staff acted, any cause of action against them is precluded by state law.

### B.     Claims against the State of Montana

The Second Amended Complaint pleads three counts against the State of Montana: declaratory relief (Count I), recovery of personal property (Count II), and claims arising under the Montana Constitution (Count IV).  The State seeks summary judgment on claims presented in Count I and II.  The State's Motion for Summary Judgment does not address Count IV.  Plaintiffs move to dismiss without prejudice all claims pled against the State in the Second Amended Complaint.  The State does not consent to the Plaintiffs' Motion to Dismiss.

The LeFers' Motion to Dismiss as to claims for which the State has moved for summary judgment is just as mistaken against the State as it is against the Commissioner.  "A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Smith*, 263 F.3d at 976 (footnote and citations omitted).  A motion to dismiss under Rule 41(a)(2) is committed to the sound discretion of the Court.  *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980).

### 1.   Counts I and II against the State of Montana

The State would suffer plain legal prejudice if Counts I and II are dismissed, to be raised again on some other day or in some other forum.  The State has actively participated in this lawsuit by engaging in pretrial proceedings and filing their Motion for Summary Judgment.  Dismissal at this point would allow the LeFers to needlessly delay resolution of claims which the State has spent considerable time, effort, and expense defending.  It is obvious that the LeFers seek dismissal to avoid an adverse ruling on the Defendants' Motions for Summary Judgment.  Tactical decisions are not a proper basis on which to grant a plaintiff's motion for voluntary dismissal. *See Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299 Fed. Appx. 664, 666 (9th Cir. 2008) (citing *Terrovona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1998).

Summary judgment on claims pled in Counts I and II, seeking declaratory judgment regarding ownership of the Colorado Documents and return of the documents is granted in favor of the State of Montana.  The Colorado Documents were public records when filed and made public by State agents in the Commissioner's office. *See* Mont. Const. art. II, § 9; Mont. Code Ann. §§ 13-37-118; 13-37-119(1).  For the reasons set forth in denying the LeFers' declaratory relief as to the Commissioner's official acts, so too with the State and its agents.

The State of Montana and its agents' acts to retain the Colorado Documents and make them available to the public was lawful at all times and in all respects.

The LeFers' claim for recovery and return of personal property pled in Count II is also without merit. This is so because, as set forth above, a claimant in an action for claim and delivery of personal property must prove the property is wrongfully detained by the defendant. *See* Mont. Code Ann. § 27-17-201(2); *1st Bank v. Winderl*, 60 P.3d 998, 1001 (Mont. 2002). The State did not wrongfully detain the Colorado Documents. Commissioner Murry and his staff properly held and processed the Colorado Documents from the time when they were delivered until they were subpoenaed by a federal grand jury. Furthermore, as this matter stands today, there is no means by which the Colorado Documents may be delivered to the LeFers, as they are in possession of a federal grand jury. *See* Fed. R. Crim. P. 6(e)(6).

### 2.    Judicial Notice

As to any copies retained by the State and the State's agents, the State requests the Court take judicial notice of the exhibits attached to the foundational affidavit of Michael G. Black, (Doc. 45). The State's request for judicial notice is granted, as the documents relate adjudicative facts in sources whose accuracy cannot be reasonably be questioned. *See* Fed. R. Evid. 201. These documents

-27-

show that the State has retained copies of only seven pages of the Colorado

Documents relevant to other lawsuits involving American Tradition Partnership,

f/k/a Western Tradition Partnership.  The copies of the Colorado Documents now

held by the State were publicly available or made available through the course of

discovery in the other lawsuits.  Because the copies of the seven pages now held

by the State were lawfully and properly obtained, the LeFers cannot make the

predicate showing that the property they claim is "wrongfully detained" and

subject to a statutory action for claim and delivery of personal property pursuant to

Montana Code Annotated § 27-17-201(2).

For these reasons, and the reasons set forth in granting the Commissioner's

Motion for Summary Judgment *supra*, the LeFers' claims pled in Counts I and II

of the Second Amended Complaint are without merit.  The State's Motion for

Summary Judgment on these claims is granted.

### 3.    Count IV against the State of Montana

The State's Motion for Summary Judgment does not discuss Count IV of the

LeFers' Second Amended Complaint.  The State argues it ought to be able to stand

in the shoes of the Commissioner as to his defense of Count IV, arguing that the

Montana Constitution claims against the Commissioner in his official capacity are,

at bottom, claims against the State.  This defense does not change the fact that

there is no motion by the State seeking judgment on Count IV.  With no motion

pending, the calculus as to the LeFers' Motion for Voluntary Dismissal changes.

The State has not expended significant resources defending against the claim nor

has it sought relief as to Count IV.  This means the LeFers' Motion to Dismiss

without prejudice the Montana Constitution claims asserted against the State in

Count IV is subject to the general rule of voluntary dismissal as set forth above.

The State's argument that judgment in favor of the Commissioner on Count

IV will have preclusive effect, barring future litigation of the Montana

Constitution claims against the State, is premature.  *Res judicata* is an affirmative

defense.  Fed. R. Civ. P. 8(c).  The State's reasoning that a state court suit against

it on the claims advanced in Count IV would be precluded is a counterfactual

conditional argument.  The relief sought based on this hypothetical situation

amounts to an advisory opinion which this Court has no jurisdiction to entertain.

*See Hayburn's Case*, 2 Dall. 409 (1792).

**C.**     **Fees**

The Commissioner argues the Court should hold the LeFers liable for his

fees and costs.[5]  Commissioner Murry argues this action has been pursued on

---

[5] The State seeks to recover fees and costs "[s]hould this Court grant the LeFers' Motion
for voluntary dismissal without prejudice[.]" (Doc. 58 at 10 n.3.)  An award of fees and costs is
inappropriate given the limited extent to which the LeFers' Motion to Dismiss is granted.  The

wholly frivolous claims and that the LeFers have engaged in unreasonable

litigation tactics.  He claims an award of his fees and costs is appropriate because

he has successfully defended against the LeFers' § 1983 claim.

Pursuant to 42 U.S.C. § 1988, a prevailing defendant in an action brought

under § 1983 may recover "a reasonable attorney's fee as part of the costs."  42

U.S.C. § 1988(b).  Such an award is appropriate where the plaintiff's action is

"frivolous, unreasonable, or without foundation[,]" *Hughes v. Rowe*, 449 U.S. 5,

14 (1980) (per curiam) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S.

412, 421 (1978)), and may include an award of out of pocket expenses and costs,

*Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1058 n.1 (9th Cir. 2006).

The Commissioner marshals convincing support for his argument that the

LeFers' claims and tactics in pursuing this action are baseless and unreasonable.

The LeFers' claims repeatedly impute illicit conduct to the Commissioner and his

office without a hint of proof or any factual support.  As discussed earlier, this

lawsuit began couched in nasty and unprofessional rhetoric, and continued with

---

LeFers' Motion to Dismiss is granted in part only as to Count IV pled against the State because
the State did not move for summary judgment on those claims or expend effort defending them.
While an award of fees may be appropriate "for work which is not useful in continuing litigation
between the parties[,]" *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993), where a plaintiff's
motion for voluntary dismissal without prejudice is granted in part because of a party's decision
not to respond to claims in issue, there is no work for which the defendant is deserving of
compensation.

hyperbole. (*See* Doc. 5 at 3-4; Doc. 4 at 4; Doc. 23 at 2-3.)  The LeFers made

representations about the Commissioner's conduct and pursued this suit asserting

ownership of the Colorado Documents without ever even asking to look at them.

(Doc. 41 at 5.)

When the Complaint was filed, and continuously throughout this litigation,

the LeFers advanced their case without factual or legal foundation.  Their

litigation tactics were not only unreasonable; they reflect a sad view of the

democratic process and the rule of law.  Count III of the Second Amended

Complaint relates claims under § 1983 that are frivolous.  While the Court reached

its decision to grant summary judgment on these claims on grounds that the

Commissioner was immune from suit under § 1983 for his quasi-judicial acts in

issue, there is no factual basis and no legal merit for the assertion that the

Commissioner unconstitutionally interfered with the LeFers' rights to assembly,

association, privacy, and speech.  From the outset of this litigation the LeFers'

claims under § 1983 have been less than a cry in the dark.  The LeFers' hyperbole,

distortions of fact, and questionable tactics that followed were an attempt to

obscure the meritless nature of these claims.  There is no cogent argument to be

made that, by following the law of the state of Montana and granting public access

to the Colorado Documents, the Commissioner deprived the LeFers of any right

guaranteed by the United States Constitution.  The Complaint is not even like the curate's egg.  Accordingly, an award of attorney's fees and costs associated with defending against Count III is appropriate.  The Commissioner shall submit an application for attorney's fees supported by affidavit justifying the claim within 10 days of this order.  The LeFers will have 10 days to respond to the request for attorney's fees and costs.  Following the Commissioner's submission and any objection lodged by the LeFers, the Court will determine the reasonableness of the fee in an Order to follow.

## IV.    Conclusion

In this State there is a robust right to open government, including right to examine documents of agencies of state government.  Mont. Const. art. II, § 9. The Commissioner complied with state law when he filed the Colorado Documents as part of his investigative functions and subsequently opened those files to the press and public.

IT IS ORDERED that the Commissioner's Motion for Summary Judgment (Doc. 38) is GRANTED.  All claims brought against Defendant James W. "Jim" Murry, Commissioner of Political Practices, in his official and individual capacity, are DISMISSED WITH PREJUDICE, with judgment entered in favor of the Commissioner.

IT IS FURTHER ORDERED that the LeFers' Motion to Dismiss claims against Commissioner Murry (Doc. 49) is DENIED.

IT IS FURTHER ORDERED that the State of Montana's request for judicial notice is GRANTED.

IT IS FURTHER ORDERED that the State of Montana's Motion for Summary Judgment on Counts I and II (Doc. 43) is GRANTED.  All claims asserted against the State in Counts I and II of the Second Amended Complaint are DISMISSED WITH PREJUDICE, and judgment entered in favor of the State of Montana on those counts.

IT IS FURTHER ORDERED that the LeFers' Motion to Dismiss claims against the State of Montana (Doc. 51) is GRANTED IN PART.  Claims asserted against the State in Count IV of the Second Amended Complaint are DISMISSED WITHOUT PREJUDICE.  All other relief sought in the LeFers' Motion to Dismiss claims against the State of Montana is DENIED.

IT IS FURTHER ORDERED that, having ruled on the rights, status, and legal relations of the parties, the Protective Order now in force (Doc. 7) is VACATED.

IT IS FURTHER ORDERED that the Commissioner's claim for attorney's fees and costs is GRANTED.  The Commissioner shall, within ten (10) days from

the date of this Order, file an application for attorney's fees, supported by affidavit and documenting proof.  The LeFers must file with the Court any objections to application for fees within ten (10) days of the Commissioner's filing.

DATED this __15__ day of October, 2013.

_____
Donald W. Molloy, District Judge
United States District Court